UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-130

| LISA M. GORDON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 15) and Commissioner's Motion for Summary Judgment (Doc. No. 17). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

Plaintiff Lisa M. Gordon ("Gordon" or "Plaintiff") initially filed her applications for Disability Insurance Benefits and SSI on July 5, 2011, alleging a disability onset date of July 1, 2006. At her most recent hearing, Plaintiff amended the alleged onset date to September 27, 2013. After Plaintiff's claim was denied both initially and on reconsideration, she requested and was granted a hearing before Administrative Law Judge Eduardo Soto. After reviewing the record and conducting a video hearing, Judge Soto issued a decision on August 14, 2013, that was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. The Appeals Council vacated and remanded the case for further consideration on September 11, 2014. A new

in-person hearing was held before Administrative Law Judge Wendell M. Sims ("the ALJ") for de novo review of Plaintiff's claims on March 30, 2015. On May 26, 2015, the ALJ issued his determination that Plaintiff was not disabled under the Act. On January 14, 2016, Plaintiff's request for review was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").

Thereafter, Plaintiff timely filed this action, seeking judicial review of the ALJ's decision.

## II.     Factual Background

In his decision, the ALJ at the first step determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date (Tr. 22). At the second step, the ALJ concluded that Plaintiff has the following combination of severe impairments: osteoarthritis of the right ankle and right knee, status post open reduction internal fixation of the right ankle, missing three fingers on the non-dominant left hand, missing one toe on the right foot, chronic obstructive pulmonary disease (COPD), obesity, carpal tunnel syndrome, and major depressive and anxiety disorders. (*Id.*). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 24). However, in reaching this determination the ALJ did find that Plaintiff has mild restrictions in activities of daily living and social functioning, and moderate difficulties with regard to concentration, persistence, or pace. (Tr. 25).

The ALJ then found that Plaintiff has residual functional capacity (RFC) to perform light work with the following limitations:

> except that she is limited to occasional climbing, balancing, kneeling, crouching, and crawling. Further, she is limited to frequent but no constant handling and fingering with her bilateral upper extremities. Finally, she is limited to simple routine repetitive tasks in a stable environment at a non-production pace.

(Tr 26). Based on these limitations, the ALJ found in the fourth step that Plaintiff is unable to perform any past relevant work. (Tr. 37). However, at the fifth step, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Poly-Packer Heat-Sealer, Photocopying-Machine Operator, and Glue Machine Sealer (officially labeled "sealing-machine operator"). (Tr. 37–38). Accordingly, the ALJ found that Plaintiff is not disabled under the Act.

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

### IV. Discussion

Plaintiff raises three alleged errors with the ALJ's decision: (1) that the ALJ did not properly accommodate Plaintiff's mild limitations in daily activities and social functioning and her moderate limitation in concentration, persistence, and pace in determining her residual functional capacity ("RFC"); (2) that the ALJ improperly relied on testimony of a vocational expert that conflicts with the Dictionary of Occupational Titles ("DOT") without first obtaining an explanation and resolving the conflict in his written decision; and (3) that the ALJ erred in his

reliance on the opinion of Dr. Hudson in determining Plaintiff's RFC.

### A. Mental Limitations

Plaintiff's first claim is that the ALJ did not properly consider her limitations in activities of daily living, social functioning, and concentration, persistence, or pace in assessing her claim and determining her RFC.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining an RFC, the ALJ must identify the claimant's "functional limitation or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. The Fourth Circuit in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), held that this means that remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).

Specifically in *Mascio*, the Fourth Circuit held that the ALJ needed to "explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity." *Id.* at 638. Thus, an ALJ may find that a mental limitation does not affect a claimant's ability to work, but remand is appropriate where the ALJ fails to give an explanation for why this limitation does not affect the ability to work. *Id.*

Here, with respect to Plaintiff's moderate limitation in concentration, persistence, and pace, this case is easily distinguishable from *Mascio*. Unlike in *Mascio*, the ALJ here did more than limit Plaintiff to simple, routine tasks or unskilled work. Rather, he limited Plaintiff to "simple routine repetitive tasks in a stable environment at a non-production pace." (Tr. 26). The

4

ALJ sufficiently accounted for Plaintiff's moderate limitation in concentration and persistence by restricting her to "repetitive tasks" in a "stable environment." *See Linares v. Colvin*, No. 5:14-cv-120, 2015 WL 4389533, at *4 (July 17, 2015) (finding a restriction to a "stable work environment with only occasional public contact to sufficiently account for limitations in concentration and persistence). And he sufficiently accounted for Plaintiff's moderate limitation in pace by restricting her to "non-production pace." *See id.* (finding "nonproduction pace" to adequately account for a moderate limitation in pace); *Horning v. Colvin*, No. 3:14-cv-722, 2016 WL 1123103, at *4 (W.D.N.C. Mar. 21, 2016) (same); *White v. Colvin*, No. 1:14-cv-161, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016) (same).

Plaintiff also claims that the ALJ did not make functional findings in light of her mild limitations in activities of daily living and social functioning, and thus did not adequately account for them in the RFC. The Commissioner asserts that *Mascio*'s requirement that an ALJ explain why a mental limitation in step three does or does not translate into a functional limitation in step four only applies to the narrow circumstances at issue in that case: where there is a *moderate* limitation in concentration, persistence, or pace. Courts in this District have consistently disagreed with this position. For instance, in *Ashcraft v. Colvin*, No. 3:13-cv-417, 2015 WL 9304561 (W.D.N.C. Dec. 21, 2015), the court held that a finding of mild limitations "correlate[s] to a limitation on the Plaintiff's ability to stay on task and possibly perform other work-related functions." *Id.* at *9. As a result, the ALJ needed to "explain whether Plaintiff's mild limitations translated into an *actual* functional limitation." *Id.* Similarly, in *Reinhardt v. Colvin*, No. 3:14-cv-488, 2015 WL 1756480 (W.D.N.C. Apr. 17, 2015), the court agreed that while mild limitations do "not necessarily translate into a work-related functional limitation, *Mascio* clearly imposes . . . a duty to explain why such mild mental health impairments . . . do

not translate into work-related limitations." *Id.* at *3.

Here, however, unlike in *Ashcraft* or *Reinhardt*, the ALJ did explain how Plaintiff's mild restriction in activities of daily living impacted his RFC analysis. Activities of daily living are "such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills." 20 C.F.R. Pt. 404, Subpt. P, App. 1. In step three, with respect to her mild restriction in activities of daily living, the ALJ noted that Plaintiff reported that "her pain is relieved with her medication and this enable[s] her to function and do her daily routines." (Tr. 25). And the ALJ expanded upon this finding in his RFC analysis. Specifically, he described in detail Plaintiff's testimony and explained why he found her testimony "as to the specific intensity, persistence, and limiting effects of her pain and other subjective symptoms" to be "not persuasive." (Tr. 27). In so finding, he compared her testimony to the activities that she performs and to the testimony of evaluating physicians. (Tr. 35–36). Accordingly, the ALJ's explanation for his RFC determination was "far from the case of omitting a plaintiff's mental limitations from a claimant's RFC." *See Gilbert v. Berryhill*, No. 5:16-cv-100, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017).

Similarly, the ALJ made sufficient findings of fact related to Plaintiff's mild difficulties in social functioning during his RFC determination. Social functioning includes "the capacity to interact with others independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ gave "significant weight" to the opinion of Dr. Steinmuller, the examining consultative psychiatrist, who found that Plaintiff is functionally able to "understand, retain and follow instructions." (Tr. 36). Dr. Steinmuller also stated that Plaintiff is "oriented to person, place, date, time, and purpose," and that her "mood and affect have consistently been assessed as appropriate." (Tr. 34). To supplement this finding, the ALJ

also relied on the testimony of Plaintiff's long-time friend, Ms. Sherrill, who stated that Plaintiff "does not have any problems with other people including authority figures, such as bosses, police, landlords or teachers," and is comfortable being "on the telephone most of the time." (Tr. 28). Thus, he adequately explained why Plaintiff's mild difficulties in social functioning do not translate into further limitations in her RFC.

### B. Testimony of the Vocational Expert

Plaintiff next claims that the ALJ improperly relied on the testimony of the Vocational Expert ("VE"). Specifically, she claims that the VE identified three hypothetical occupations that Gordon could perform in line with her RFC that conflict with the requirements for those occupations listed in the Dictionary of Occupational Titles ("DOT").

The three occupations that the VE identified as consistent with the hypothetical question that the ALJ asked are: Sealing-Machine Operator (DOT 641.685-074), Photocopying-Machine Operator (DOT 207.685-014), and Poly-Packer and Heat-Sealer (DOT 920.686-038). The ALJ asked the VE if his position that these occupations meet the hypothetical limitations was consistent with the requirements for these positions in the DOT, and the VE responded affirmatively. The ALJ did not ask additional questions about conflicts between the VE's testimony and the DOT before relying on the VE testimony.

The Social Security Administration requires that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. The Fourth Circuit has held that this requires an ALJ to go beyond merely asking a VE if his testimony is consistent with the DOT; rather the "ALJ independently must identify conflicts between the expert's testimony and

the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015). However, the ALJ need only identify "apparent" conflicts—statements that are "seeming real or true, but not necessarily so." *Id.* at 209 (quoting *Oxford Dictionary*, http://www.oxforddictionaries.com/definition/apparent).

Plaintiff alleges that the VE's answer to the ALJ's hypothetical question creates two apparent conflicts with the DOT that the ALJ should have independently identified. This Court finds that neither of the alleged conflicts is apparent, and thus the ALJ did not err in not seeking further explanation from the VE.

First, Plaintiff alleges that the DOT requirements for these occupations would require her to perform work at a production pace, conflicting with the VE's testimony that these positions meet the prescribed pace limitations. However, none of the DOT descriptions of the positions chosen by the VE requires a worker to work at a production pace. Some courts have held that when the DOT is silent on an issue that a VE testifies about, there cannot be a conflict. *See Williams v. Colvin*, 2016 WL 1276415, at *5 (E.D.N.C. Mar. 30, 2016) ("[B]ecause the DOT is silent as to a sit/stand option, there is no conflict between the VE's testimony and the DOT . . . ."). Other courts have held that there can still be a conflict if the DOT is silent on an issue if the description nonetheless makes a conflict apparent. *Finnegan v. Berryhill*, 2017 WL 2224332, at *7 (M.D.N.C. May 19, 2017). But if the DOT is silent, an ALJ has greater leeway to rely on the experience and testimony of a VE. *See Lusk v. Astrue*, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013) ("The DOT is silent . . . ; as such it was entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions.").

Even assuming that a conflict is possible when the DOT is silent, Plaintiff's claim fails. She argues that the language of "feeding" or "tending" to a machine indicates that these positions are production-pace jobs. But merely using or tending to a machine does not necessarily mean

that a worker must function at production pace. Rather, the VE's testimony appropriately supplements the language of the DOT and supports the finding that these occupations do not require a claimant to perform at a production pace. And other cases in this Circuit lend support to the VE's testimony. *See Walters v. Colvin*, No. 7:14-cv-280, 2016 WL 1043723, at *5–6 (E.D.N.C. Feb. 26, 2016) (Jones, M.J.) (upholding an ALJ's decision when the VE testified that a Photocopying Machine Operator does not require "production or assembly-type work"); *Carson v. Colvin*, No. 1:12-cv-262, 2014 WL 253537, at *5 (W.D.N.C. Jan. 23, 2014) (finding that a VE's testimony that a Sealing Machine Operator is a non-production pace job was consistent with the DOT); *Anderson v. Colvin*, No. 1:10CV671, 2013 WL 3730121, at *5 (M.D.N.C. July 12, 2013) (Webster, M.J.) (upholding an ALJ's decision when the VE found that a Poly Packer Heat Sealer is an occupation that does not require a "fast production pace"). Accordingly, there is no apparent conflict between the DOT and the VE's testimony as to pace requirements, and the ALJ did not err by failing to ask follow-up questions.

Second, Plaintiff alleges that the ALJ erred by failing to ask the VE additional questions about environmental limitations and pulmonary irritants as a result of her COPD. However, the ALJ did not find that Gordon had any environmental limitations affecting her RFC. In his RFC analysis, the ALJ cited evidence from five medical examinations—spanning from 2010 through February 2015—demonstrating that Plaintiff did not have any respiratory issues. (Tr. 28–33). The ALJ then concluded that there is no affirmative evidence of functional limitations caused by Plaintiff's COPD based on her consistently normal lung examinations, lack of medication for respiratory impairments, and lack of definitive chest radiographs or x-rays showing signs of acute bronchitis. (Tr. 35). Accordingly, he adequately accounted for his finding that Plaintiff's COPD did not create any environmental limitations for her RFC.

9

Even if the ALJ had found that Plaintiff needed environmental limitations, he preemptively addressed this hypothetical concern by stating that "even if the undersigned were to find that the claimant's COPD caused environmental restrictions . . . all of the jobs given by the vocational expert do not require exposure to pulmonary irritants pursuant to the Dictionary of Occupational Titles." (Tr. 38). And there is clearly no conflict between this finding and the DOT, as none of the three occupations listed by the VE require any environmental exposure. *See Dictionary of Occupational Titles*, "Photocopying-Machine Operator" (finding that "exposure to weather," "atmospheric conditions," "extreme cold," "extreme heat," "wet/ and or humid conditions," "radiation," "toxic caustic chemicals," and "other environmental conditions" are all "not present"); *id.*, "Poly-Packer and Heat-Sealer" (same); *id.*, "Sealing-Machine Operator" (same). Thus, the ALJ did not err in excluding environmental limitations from Plaintiff's RFC, nor did he err by failing to ask the VE specific questions about environmental limitations.

### C. Reliance on Opinion of Dr. Hudson

Plaintiff's third assignment of error is that the ALJ improperly evaluated the opinion testimony of B. Lee Hudson, Ph.D.

Dr. Hudson, who is a state agency psychological examiner, answered a form question about Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" by stating that she is "moderately limited." (Tr. 118). When asked to explain in narrative form the impact of this limitation, Dr. Hudson stated that Plaintiff "is able to sustain attention and concentration to complete a small variety of tasks at a semi-rapid pace." (Tr. 118). The ALJ found Dr. Hudson's opinion to be credible and gave it substantial weight. (Tr. 36). Accordingly, he relied upon Dr. Hudson's opinion in finding that

Plaintiff is moderately limited in concentration, persistence, and pace, as discussed above.

Plaintiff argues that the ALJ failed properly give substantial weight to Dr. Hudson's opinion because the ALJ did not provide any limitation with respect to rest periods and changes in workplace setting in the RFC. However, Dr. Hudson's finding of a moderate limitation was in response to a form question that covered several aspects of functioning, and when Dr. Hudson explained his findings in narrative form, he only limited Plaintiff to "a small variety of tasks at a semi-rapid pace." He further stated that she "retains functional capacity to perform simple, and most detailed, tasks with adequate CPP over normal workday/ week," and he found that she is able to "adapt and respond to normal, routine changes in the workplace." (Tr. 118). Notably, he did not place any limitations on her ability to sustain this work without additional rest periods. Accordingly, the ALJ properly accounted for Dr. Hudson's opinion by limiting Plaintiff's RFC to "simple routine repetitive tasks in a stable environment at a non-production pace."

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ followed proper legal standards and that his decision is supported by substantial evidence.

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 15) is **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**, and the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act is **AFFIRMED**.

**SO ORDERED**.

Signed: November 28, 2017

Graham C. Mullen
United States District Judge